# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP1047 |
| COMPLETE TITLE: | Asma Masri, |

Asma Masri,

       Petitioner-Appellant-Petitioner,

    v.

State of Wisconsin Labor and Industry Review Commission,

       Respondent-Respondent,

Medical College of Wisconsin, Inc.,

       Interested Person-Respondent.

---

REVIEW OF A DECISION OF THE COURT OF APPEALS
348 Wis. 2d 1, 832 N.W.2d 139
(Ct. App. 2013 – Published)
PDC No: 2013 WI App 62

---

| | |
|---|---|
| OPINION FILED: | July 22, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 13, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | William S. Pocan |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | BRADLEY, J., ABRAHAMSON, C.J., dissent. (Opinion filed.) |
|   NOT PARTICIPATING: | |

---

ATTORNEYS:

    For the petitioner-appellant-petitioner, there were briefs by *Lawrence G. Albrecht*, *Aaron P. McCann*, *Katie S. Lonze* and *First, Albrecht & Blondis, S.C.*, Milwaukee, and oral argument by *Lawrence G. Albrecht*.

    For the respondent-respondent, the cause was argued by *Steven C. Kilpatrick*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

For the interested person-respondent, there was a brief by *Amy Schmidt Jones*, *Kirk A. Pelikan*, and *Michael Best & Friedrich LLP*, Milwaukee, and oral argument by *Amy Schmidt Jones*.

An amicus curiae brief was filed by *Timothy W. Feeley*, *Sara J. MacCarthy*, and *Hall, Render, Killian, Heath & Lyman, P.C.*, Milwaukee, on behalf of the Wisconsin Hospital Association.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP1047
(L.C. No. 2011CV15410)

STATE OF WISCONSIN       :       IN SUPREME COURT

Asma Masri,

      Petitioner-Appellant-Petitioner,

      v.

State of Wisconsin Labor and Industry Review Commission,

      Respondent-Respondent,

Medical College of Wisconsin, Inc.,

      Interested Person-Respondent.

**FILED**

**JUL 22, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals[1] affirming a circuit court order that affirmed a Labor and Industry Review Commission (LIRC) determination.

---

[1] Masri v. LIRC, 2013 WI App 62, 348 Wis. 2d 1, 832 N.W.2d 139.

¶2   The case requires statutory interpretation to determine whether uncompensated interns are entitled to the anti-retaliation protections of Wis. Stat. § 146.997 (2007-08)[2]——Wisconsin's health care worker protection statute.  Because this case involves an administrative agency's interpretation of § 146.997, we must also determine the level of deference, if any, to grant LIRC, which, in conjunction with the Department of Workforce Development (DWD), is charged with administering the statute.

¶3   Asma Masri (Masri) was a doctoral student at the University of Wisconsin-Milwaukee (UWM) when she began work as a "Psychologist Intern" in the Division of Transplant Surgery at the Medical College of Wisconsin (MCW).  MCW assigned Masri to the transplant surgery unit at Froedtert Hospital.  MCW ended Masri's internship after she met with an MCW administrator to report "clinical/ethical" concerns.  Masri contends that the termination of the internship violated Wis. Stat. § 146.997, which provides that certain health care employers and their employees may not take "disciplinary action against . . . any person" who in good faith reports violations of state or federal laws, regulations, or standards.  Wis. Stat. § 146.997(3)(a).  Wisconsin Stat. § 146.997(1)(b) adopts the definition of "disciplinary action" given in Wis. Stat. § 230.80(2), namely, "any action taken with respect to an <u>employee</u>."  Wis. Stat.

_____

[2] All subsequent references to the Wisconsin Statutes are to the 2007-08 version unless otherwise indicated.

2

§ 230.80(2) (emphasis added).   Thus, the pivotal question in this case is whether Masri, as an unpaid intern, is an employee and therefore protected by Wis. Stat. § 146.997(3)(a).

¶4   LIRC determined that § 146.997 applies only to an employee, and that as an unpaid intern, Masri was not an employee.   Granting due weight deference to LIRC's decision, the circuit court and the court of appeals both affirmed.

¶5   We conclude the following.

¶6   First, we accord LIRC's decision due weight deference because LIRC has experience interpreting the meaning of "employee" under various statutes and is charged with administering Wis. Stat. § 146.997.   The fact that LIRC had not previously considered the specific question whether an unpaid intern is an employee is not enough to abate the due weight deference owed to the agency.   See Jamerson v. Dep't of Children & Families, 2013 WI 7, ¶47, 345 Wis. 2d 205, 824 N.W.2d 822.

¶7   Second, we agree with LIRC that Wis. Stat. § 146.997 applies only to employees, a category that does not include interns who do not receive compensation or tangible benefits. See Masri v. Med. Coll. of Wis., ERD No. CR200902766 (LIRC, Aug. 31, 2011).   As Wis. Stat. § 146.997 does not define "employee,"

we must give the term its ordinary meaning.[3] <u>State ex rel. Kalal v. Circuit Court for Dane Cnty.</u>, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. After consulting the language, context, and structure of the statute, we conclude that LIRC's interpretation is reasonable, and there is no more reasonable interpretation. Because Masri received no compensation or tangible benefits, she was not an employee of MCW and was therefore not entitled to anti-retaliation protection under § 146.997(3)(a).

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶8 Masri was a doctoral candidate at UWM when she began working as an unpaid "Psychologist Intern" in MCW's Division of Transplant Surgery on August 27, 2008. Masri worked 40 hours a week and was introduced as a "Psychologist Intern." She received an "all-access" badge for MCW and Froedtert Memorial Lutheran Hospital (Froedtert)[4] and had complete access to patient

---

[3] Wisconsin Stat. § 230.80, which lends its definition of "disciplinary action" to Wis. Stat. § 146.997, does define the term "employee." Wis. Stat. § 230.80(3). Under Wis. Stat. § 230.80(3), "'Employee' means any person employed by any governmental unit . . . " with some exceptions. The definition in § 230.80(3) is not helpful in the present case because it fails to define "employed," which it uses in the definition of "employee." Thus, even if we were to apply the § 230.80(3) definition of "employee" to Masri, we would still have to define "employed" according to its ordinary meaning.

[4] According to Froedtert's letter to the Equal Rights Supervisor, "Froedtert Hospital is a teaching and research hospital providing tertiary-level health care services on both an inpatient and outpatient basis. The physicians who provide patient care at Froedtert Hospital are employees of the Medical College of Wisconsin."

records. On November 19, 2008, Masri met with MCW Department of Surgery Administrator Jon Mayer (Mayer) to report "clinical/ethical concerns." Masri alleges that after she reported a few complaints, Mayer ended the meeting so that he could discuss the report with Masri's supervisor, Dr. Rebecca Anderson (Dr. Anderson), MCW's Director of Transplant Psychological Services.[5]

¶9 Effective November 24, 2008, Dr. Anderson ended Masri's internship. On August 6, 2009, Masri filed a standard-form retaliation complaint against MCW and Froedtert with the Equal Rights Division (ERD) of DWD. ERD matched the complaint with Wis. Stat. § 146.997 as the anti-retaliation law under which Masri might be protected.

¶10 On August 19, 2009, MCW responded to the complaint and argued that Masri was not covered by Wis. Stat. § 146.997 because she was not an employee. MCW noted that Masri was a student at UWM and was allowed to gain clinical experience at MCW only as part of UWM's educational program. Moreover, MCW

---

[5] When she talked with Mayer, Masri alleged that Dr. Anderson's assistant told Masri to work as a social worker (rather than a "Psychologist Intern") while the social worker in the transplant unit was on vacation.

She alleged Dr. Anderson's assistant told her to prepare two separate patient evaluations, which Masri refused to do.

Finally, Masri alleged that Dr. Anderson told her to create a "borderline personality" diagnosis for a patient who had received a possibly negligent breast cancer operation in order to discredit the patient if she filed a malpractice suit. Masri refused. Masri claims that Mayer cut her off but that she would have continued with more complaints.

claimed that it terminated Masri's internship due to concerns with her performance and that these alleged concerns began before Masri made her complaints to Mayer.[6]  MCW attached its policy on whistleblowing to its letter responding to the complaint.  The MCW policy stated, "Wisconsin law (Wisconsin Statue [sic] 146.977) prohibits retaliatory action by a health provider against an <u>employee</u> who in good faith reports [violations of state or federal law or standards or violations of ethical standards]."  (Emphasis added.)  MCW also attached to its response letter a series of Dr. Anderson's notes about Masri's allegedly unsatisfactory performance beginning on October 28, 2008.

¶11 On September 11, 2009, in a letter to Equal Rights Supervisor James Drinan, Masri laid out the facts underlying her complaint.  Masri claimed that Dr. Anderson applied for grants to obtain funding for Masri's position and that Dr. Anderson promised her health insurance and parking.  Masri eventually received free parking at MCW but did not receive any compensation or health insurance.  Masri also contended that Dr.

---

[6] MCW attached a document drafted by Dr. Anderson to a letter it sent to Equal Rights Supervisor James Drinan.  Dr. Anderson's document is not dated, but it lists a series of alleged issues with Masri's performance beginning on October 28, 2008.  In her response to MCW's letter to the Equal Rights Supervisor, Masri asked, "When, exactly, was this document created, and where is the full chain of email and correspondence relevant to this document's creation?"  The record does not indicate when Dr. Anderson drafted the list of alleged issues with Masri's performance.  In any event, because we conclude that Masri is not protected under Wis. Stat. § 146.997, the alleged issues with her performance are not at issue.

Anderson was supposed to prepare an "Affiliation Agreement" contract that would be executed between MCW and UWM,[7] but Dr. Anderson did not prepare that contract.

¶12 On September 15, 2009, an Equal Rights Officer issued a Preliminary Determination and Order (Preliminary Determination) that dismissed Masri's complaint. The Preliminary Determination concluded that ERD did not have jurisdiction under Wis. Stat. § 146.997 because Masri was an unpaid intern, and therefore she was not an employee of either MCW or Froedtert.

¶13 Masri appealed the Preliminary Determination as it related to MCW on September 23, 2009.[8] On appeal, Masri argued

_____

[7] UWM has a document called, "Internship in Counseling Psychology[,] Department of Educational Psychology at The University of Wisconsin-Milwaukee: A Handbook for Faculty, Supervisors, and Students" (Internship Handbook). Under a section titled "Personnel Arrangements," the Internship Handbook states:

> The intern should be employed under a contract comparable to the psychological services staff contracts within the internship setting. Salary, fringe benefits, and travel allowances (if applicable) should be specified in the contract. Office space, equipment, and secretarial services should be provided by the internship setting as well as some released time for professional development.

There is also a section in the Internship Handbook titled "Credits/Intern Status" that provides, "The student should have a title such as 'intern,' 'resident,' or other similar designation of trainee status. Full-time Ph.D. interns do not need to register for intern credits, though they need to maintain dissertator status."

[8] Masri did not appeal the Preliminary Determination as it related to Froedtert.

that the investigator failed to properly investigate the complaint and that the investigator's summary dismissal on jurisdictional grounds was improper. She sent a letter dated December 4, 2009, to the ERD Hearing & Mediation Section Chief in which she argued that even if an "employee" must be someone who receives compensation, that compensation may come in the form of "tangible benefits." She argued that her all-access badge, office space, support staff, and networking opportunities constituted tangible benefits that made her an employee. She also asserted that "Dr. Anderson had promised her health insurance, employee parking, and financial grants-in-aid."

¶14 On January 14, 2010, an administrative law judge (ALJ) for ERD affirmed the Preliminary Determination. The ALJ determined that Wis. Stat. § 146.997 is limited to employees and that Masri was not an employee because she received no financial compensation.

¶15 Masri filed a petition for review with LIRC on February 4, 2010. On August 31, 2011, LIRC issued a decision affirming the ALJ's decision and adopting his findings and conclusion as its own. Masri v. Med. Coll. of Wis., ERD No. CR200902766 (LIRC, Aug. 31, 2011). In its decision, LIRC cited Ratsch v. Mem'l Med. Ctr., ERD No. CR200504192 (LIRC, Mar. 10, 2006), for the proposition that Wis. Stat. § 146.997 applies exclusively to employees. Masri v. Med. Coll. of Wis., ERD No. CR200902766 (LIRC, Aug. 31, 2011). LIRC said that it had previously looked at compensation to determine employment status and noted that it is possible that a worker could be an employee

based on tangible benefits other than salary. Id. However, LIRC rejected Masri's argument that she received tangible benefits that would make her an employee. Id. LIRC determined that Masri's alleged tangible benefits——the security badge, office space, parking, and support staff——all related to her duties and had no independent value. Id. In addition, networking opportunities were not tangible and could not be assigned value. Id.

¶16 LIRC also determined that the fact that Masri's supervisor told her she would have health insurance and had applied for grants was not enough to confer employee status on Masri since she never received those benefits. Id. Masri suggested that the university's internship handbook evidenced an employment relationship when it said that interns are supposed to be paid and should receive a contract similar to the staff with whom the intern worked. Id. LIRC rejected this argument because Masri never entered into such a contract. Id. Finally, LIRC rejected Masri's public policy argument that she should be protected from retaliation because she was in an ideal position to report illegal or unethical conduct. Id. LIRC declined to extend coverage under Wis. Stat. § 146.997 where the legislature did not, and it stated that "there is no authority to consider an unpaid activity employment simply because of the importance of the activity." Id. (citing Langer v. City of Mequon, ERD No. 199904168 (ERD, Oct. 30, 2000), aff'd Langer v. City of Mequon, ERD No. 199904168 (LIRC, Mar. 19, 2001)).

¶17 Masri filed a petition for review with the Milwaukee County Circuit Court on September 27, 2011.[9] Circuit Judge William S. Pocan afforded due weight deference to LIRC's interpretation of Wis. Stat. § 146.997 and determined that LIRC's interpretation was reasonable and that there was not a more reasonable interpretation. The circuit court concluded that § 146.997 applies only to employees, and Masri was not an employee. Consequently, the circuit court affirmed the LIRC decision on April 2, 2012. Masri appealed.

¶18 In a published decision, a divided court of appeals affirmed the circuit court. Masri v. LIRC, 2013 WI App 62, 348 Wis. 2d 1, 832 N.W.2d 139. Also affording due weight deference to LIRC's decision, the court of appeals agreed with LIRC that § 146.997 applies only to employees and that Masri was not an employee. Id., ¶8. In a passionate, policy-oriented dissent, Judge Ralph Adam Fine argued that the purpose of § 146.997 is to protect patients and that even uncompensated interns should be protected from retaliation when they report illegal or unethical

---

[9] MCW joined the action in the circuit court as an interested person pursuant to Wis. Stat. § 227.53(2), which reads in part:

Every person served with the petition for review as provided in this section and who desires to participate in the proceedings for review thereby instituted shall serve upon the petitioner, within 20 days after service of the petition upon such person, a notice of appearance clearly stating the person's position with reference to each material allegation in the petition and to the affirmance, vacation or modification of the order or decision under review.

conduct contemplated by § 146.997.  See id., ¶44 (Fine, J., dissenting).

¶19 Masri petitioned this court for review, which we granted on November 13, 2013.

## II. STANDARD OF REVIEW

¶20 When there is an appeal from a LIRC determination, we review LIRC's decision rather than the decision of the circuit court.  See Beecher v. LIRC, 2004 WI 88, ¶22, 273 Wis. 2d 136, 682 N.W.2d 29.  Although statutory interpretation is a question of law that this court generally reviews de novo, we may give some deference to LIRC's decision.  See UFE Inc. v. LIRC, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996).  We generally assign one of three levels of deference to agency interpretations: great weight deference, due weight deference, or de novo review.  Keup v. DHFS, 2004 WI 16, ¶12, 269 Wis. 2d 59, 675 N.W.2d 755.  The parties in this case dispute the appropriate level of deference. As will be discussed below, we accord due weight deference to LIRC's decision.[10]

## III. DISCUSSION

¶21 DWD is the agency charged with administering Wis. Stat. § 146.997.  Wis. Stat. § 146.997(1)(a).  LIRC is an

---

[10] "[D]ue weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it."  Wis. Stat. § 227.57(10).

independent agency attached to DWD for administrative purposes,[11] and if deference is appropriate, it goes to the decision of LIRC. Wis. Stat. § 15.225(1); see DILHR v. LIRC, 193 Wis. 2d 391, 397, 535 N.W.2d 6 (Ct. App. 1995) ("Where deference to an agency decision is appropriate, we are to accord that deference to LIRC, not to the department.") (citing DILHR v. LIRC, 161 Wis. 2d 231, 245, 467 N.W.2d 545 (1991)). Thus, in this case, we review LIRC's interpretation of Wis. Stat. § 146.997. We grant one of three levels of deference to administrative agency decisions: great weight, due weight, or de novo review. Keup, 269 Wis. 2d 59, ¶12.

¶22 An agency's decision receives great weight deference when all the following criteria are met:

> (1) the agency [is] charged by the legislature with the duty of administering the statute; (2) . . . the interpretation of the agency is one of long-standing; (3) . . . the agency employed its expertise or specialized knowledge in forming the interpretation [at issue]; and (4) . . . the agency's interpretation will provide uniformity and consistency in the application of the statute.

UFE Inc., 201 Wis. 2d at 284 (quoting Harnischfeger Corp. v. LIRC, 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995)). Under great weight deference, the reviewing court will not overturn an agency's reasonable interpretation that does not conflict with the statute's clear meaning even if the court believes there is a more reasonable interpretation. Id. at 287.

---

[11] A Brief History of LIRC, Wisconsin.gov, http://dwd.wisconsin.gov/lirc/lrc_about.htm (last visited July 2, 2014).

¶23 Reviewing courts apply due weight deference to agency interpretations "when the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court." Id. at 286. The decision to apply due weight deference is based more on the fact that the legislature charged the agency with administering the statute than on the agency's specialized knowledge or expertise. Id. Under due weight deference, a reviewing court will not interfere with the agency's reasonable interpretation if it fits within the purpose of the statute unless there is a more reasonable interpretation available. Id. at 286-87.

¶24 Finally, reviewing courts use a de novo standard of review "when the issue before the agency is clearly one of first impression, or when an agency's position on an issue has been so inconsistent so as to provide no real guidance." Id. at 285 (internal citations omitted). However, a reviewing court may grant due weight deference to an agency's decision on an issue of first impression if the agency is charged with administering the statute and has experience with issues that the statute addresses, even if the agency has not interpreted the particular statutory provision at issue. See Jamerson, 345 Wis. 2d 205, ¶¶46-47. When a court uses a de novo standard of review, it gives no deference to the agency's decision. Keup, 269 Wis. 2d 59, ¶16.

¶25 No party suggests that great weight deference is appropriate in this case. Instead, the dispute is whether this

13

court should give LIRC's interpretation due weight deference or no deference.

¶26 Masri argues that this court should interpret Wis. Stat. § 146.997 de novo in part because the meaning of "employee" in § 146.997 is a matter of first impression. Although Masri is correct that LIRC has not yet determined whether an unpaid intern is an "employee" under Wis. Stat. § 146.997, DWD and LIRC have experience interpreting statutes relating to employment relationships. See, e.g., Langer v. City of Mequon, ERD No. 199904168 (ERD, Oct. 30, 2000), aff'd Langer v. City of Mequon, ERD No. 199904168 (LIRC, Mar. 19, 2001) (stating that unpaid board of zoning appeals appointee was not an employee under the Wisconsin Fair Employment Act); Ficken v. Harmon Solutions Grp., ERD No. CR200003282 (LIRC, Feb. 7, 2003) (stating that uncompensated volunteers are not "employees" and therefore are not covered under the Wisconsin Fair Employment Act).

¶27 Moreover, LIRC has considered the scope of "employee" under § 146.997 and determined that the statutory reference to any "person" did not extend protections to a former employee. See Ratsch v. Mem'l Med. Cntr., ERD No. CR200504192 (LIRC, Mar. 10, 2006) ("The commission concludes that § 146.997 pertains only to employees in spite of the reference in § 146.997(3) . . . to the prohibition against a health care facility or health care provider taking 'disciplinary action' against 'any person' . . . ."). Thus, even though LIRC has not determined whether an unpaid intern is an "employee," it has

14

experience interpreting the scope of "employee" in several contexts. The fact that an agency is deciding an issue of first impression does not necessarily preclude the agency's decision from receiving due weight deference if the agency is charged with administering the statute at issue and has relevant experience. See Jamerson, 345 Wis. 2d 205, ¶47.

¶28 Masri contends that LIRC's interpretation should not receive due weight deference because it contravenes what she argues are § 146.997's two related purposes: expanding retaliation protection for health care workers and protecting patients and public health by encouraging people to report misconduct. However, the decision to accord due weight deference to an agency's interpretation depends on whether the agency is charged with administering the statute and whether it has some expertise in the area involved, UFE Inc., 201 Wis. 2d at 286, not on purposes allegedly contained in the statute. After the reviewing court determines that due weight deference is appropriate, the court upholds an agency's reasonable interpretation if it comports with the statute's purpose and if no more reasonable interpretation is available. Id. at 286-87. Thus, consideration of whether LIRC's decision comports with the statute's purpose comes after we determine the appropriate level of deference.

¶29 In sum, because the legislature charged LIRC with administering § 146.997 and LIRC has experience analyzing employment relationships, we give due weight deference to LIRC's decision. We turn now to the language of the statute to

15

determine whether LIRC's interpretation is reasonable and whether there is a more reasonable interpretation.

### A. Interpretation of Wis. Stat. § 146.997

¶30 We begin our analysis with the language of the statute, and we assume that the legislature's intent is expressed therein. Kalal, 271 Wis. 2d 633, ¶¶44-45. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id., ¶45 (citations omitted). In addition to the language, the context and structure of the statute are important, and we interpret the statute in light of "surrounding or closely-related statutes." Id., ¶46. If the statute's meaning is plain, the analysis ordinarily ends. Id., ¶45.

¶31 Because the subsections of Wis. Stat. § 146.997 are closely related, we consider each subsection in turn. As will be discussed, the statute demonstrates that it applies exclusively to employees, and the ordinary meaning of "employee" is someone who works for compensation or tangible benefits.

### 1. Language, Structure, and Context

¶32 Wisconsin Stat. § 146.997 lays out the health care worker protection law. Subsection (1) of the statute begins with several definitions but, important for this case, § 146.997(1) does not define "employee." Thus, as we interpret the statute, we must attempt to give the word "employee" its "common, ordinary, and accepted meaning." Kalal, 271 Wis. 2d 633, ¶45 (citations omitted).

16

¶33 Subsection (2) describes who may report violations of state and federal laws and regulations:

> Any employee of a health care facility or of a health care provider who is aware of any information, the disclosure of which is not expressly prohibited by any state law or rule or any federal law or regulation, that would lead a reasonable person to believe any of the following may report that information [to any of the enumerated authorities] . . . .

Wis. Stat. § 146.997(2)(a) (emphasis added). The statute goes on to list the kinds of violations that employees may report. Subsection (2) also states that "[a]ny employee of a health care facility or health care provider may initiate, participate in or testify in any action or proceeding in which a violation specified in par. (a)1. or 2. is alleged." Wis. Stat. § 146.997(2)(c) (emphasis added). Finally, subsec. (2) provides, "Any employee of a health care facility or health care provider may provide any information relating to an alleged violation specified in par. (a)1. or 2. to any legislator or legislative committee." Wis. Stat. § 146.997(2)(d) (emphasis added). Thus, the statute addresses only one category of people bringing complaints: employees.

¶34 Subsection (3) contains the anti-retaliation provision at issue in this case:

> No health care facility or health care provider and no employee of a health care facility or health care provider may take disciplinary action against, or threaten to take disciplinary action against, any person because the person reported in good faith any information under sub. (2)(a), in good faith initiated, participated in or testified in any action

17

or proceeding under sub. (2)(c) or provided in <u>good faith</u> any information under sub. (2)(d) or because the health care facility, health care provider or employee believes that the person reported in <u>good faith</u> any information under sub. (2)(a), in <u>good faith</u> initiated, participated in or testified in any action or proceeding under sub. (2)(c) or provided in <u>good faith</u> any information under sub. (2)(d).

Wis. Stat. § 146.997(3)(a) (emphasis added). As used in the above-quoted provision, "'[d]isciplinary action' means any action taken with respect to an <u>employee</u> which has the effect, in whole or in part, of a penalty . . . ." Wis. Stat. § 230.80(2) (emphasis added); <u>see</u> Wis. Stat. § 146.997(1)(b).[12] The language of § 146.997(3)(a) makes it clear that the statute applies only to employees because by definition, only employees are subject to "disciplinary action." In addition to "disciplinary action," the term "good faith" is described in terms of employees. Wisconsin Stat. § 146.997(3)(c) states that "an <u>employee</u> is not acting in good faith if the <u>employee</u> reports any information under sub. (2)(a) that the <u>employee</u> knows or should know is false or misleading . . . ." Wis. Stat. § 146.997(3)(c) (emphasis added).

¶35 Subsection (4) discusses the enforcement of the statute and states in part, "Any <u>employee</u> of a health care facility or health care provider who is subjected to disciplinary action, or who is threatened with disciplinary action, in violation of sub. (3) may file a complaint with the

---

[12] The definition of "disciplinary action" comes from Wis. Stat. § 230.80, which is part of the statutory chapter relating to state employment relations. <u>See generally</u> Wis. Stat. ch. 230.

department under s. 106.54(6)." Wis. Stat. § 146.997(4)(a) (emphasis added). Wisconsin Stat. § 106.54(6), the statute under which § 146.997 complaints are filed, refers to Wisconsin's Fair Employment Act when it states, "The division shall receive complaints under s. 146.997(4)(a) of disciplinary action taken in violation of s. 146.997(3) and shall process the complaints in the same manner that employment discrimination complaints are processed under s. 111.39." Wis. Stat. § 106.54(6) (emphasis added). Thus, only employees may seek a remedy under § 146.997(4), and the available remedies are found in Wis. Stat. § 111.39.

¶36 Wisconsin Stat.§ 111.39 is part of the Fair Employment Act and provides that the hearing examiner may grant remedies to "effectuate the purpose of this subchapter."[13] Wis. Stat. § 111.39(4)(c). The remedies mentioned in Wis. Stat. § 111.39(4)(c) include back pay and compensation, neither of

---

[13] The purposes of the Fair Employment subchapter include "protect[ing] by law the rights of all individuals to obtain gainful employment and to enjoy privileges free from employment discrimination" and "encourag[ing] and foster[ing] to the fullest extent practicable the employment of all properly qualified individuals." Wis. Stat. § 111.31(2)-(3).

which would be appropriate for an unpaid intern.[14]  Aggrieved employees may also receive attorney fees under the Fair Employment Act.  See Watkins v. LIRC, 117 Wis. 2d 753, 765, 345 N.W.2d 482 (1984).  However, in light of the lack of other remedies, it is unlikely that an intern would bring a claim solely to recover the fees of her attorney.  Finally, under Wis. Stat. § 146.997(5), civil penalties are available for violations of § 146.997(3), but like attorney fees, a civil penalty would not make an intern whole.  The lack of remedies for unpaid interns demonstrates that it is highly unlikely that unpaid interns fall under the anti-retaliation protections of § 146.997(3).

¶37 Masri argues that although Wis. Stat. § 146.997 utilizes Wis. Stat. § 111.39, there is no express provision that "employee" must mean the same thing under both statutes.  Masri

_____

[14] Wisconsin Stat. § 111.39 also provides for reinstatement as a potential remedy and states that "the examiner shall award compensation in lieu of reinstatement if requested by all parties and may award compensation in lieu of reinstatement if requested by any party."  Wis. Stat. § 111.39(4)(c).  The reinstatement provisions in § 111.39(4)(c) allow the parties to agree to compensation, which would seemingly prevent discord in the workplace in the event the parties could not work together harmoniously.  Similarly, the examiner has some discretion to order compensation instead of reinstatement if one party requests it.  Id.  However, in the context of an intern, compensation is not an option because of the formula in the statute.  Id. (providing that "[c]ompensation in lieu of reinstatement for a violation of s. 111.322(2m) may not be less than 500 times nor more than 1,000 times the hourly wage of the person discriminated against when the violation occurred.").  Thus, having reinstatement as the sole remedy would be problematic in the event that the retaliatory termination created ill will and a hostile work environment.

may be correct that the definition of "employee" under the two statutes is not required to be identical, but her argument is unpersuasive because there also is no provision expressly requiring different treatment for interns.    Rather, the references to the Fair Employment Act and the pervasive use of the term "employee" more strongly suggest that only employees who receive compensation or tangible benefits fall under the statutory protection against retaliation.[15]

¶38  Subsection (5) of Wis. Stat. § 146.997 provides for civil penalties for "[a]ny health care facility or health care provider and any employee of a health care facility or health care provider who takes <u>disciplinary action</u> against, or who threatens to take disciplinary action against, any person in violation of sub. (3)."    Wis. Stat. § 146.997(5) (emphasis added).    Again, the statute references "disciplinary action," which can be taken only against an employee.

---

[15] Masri highlights the fact that Wis. Stat. § 146.997 does not incorporate the Fair Employment Act's definition of "employee."    The Fair Employment Act's definition of "employee" provides, "'Employee' does not include any individual employed by his or her parents, spouse or child."    Wis. Stat. § 111.32(5).    Thus, the definition in the Fair Employment Act is unhelpful because it describes only situations in which there is no employment relationship.    It does not define the parameters of "employee."    Instead, LIRC has considered the scope of "employee" under the Fair Employment Act and has determined that only workers who receive compensation or tangible benefits are employees.    See <u>Langer v. City of Mequon</u>, ERD No. 199904168 (LIRC, Mar. 19, 2001).    Therefore, the fact that the legislature did not reference the Fair Employment Act's definition of "employee" in Wis. Stat. § 146.997 does not support Masri's argument.

21

¶39 Subsection (6), the final subsection of § 146.997, states in relevant part: "Each health care facility and health care provider shall post, in one or more conspicuous places where notices to employees are customarily posted, a notice in a form approved by the department setting forth employees' rights under this section." Wis. Stat. § 146.997(6) (emphasis added). Consistent with an interpretation that § 146.997(3) protects only employees, employers need put only their employees on notice of their rights.

¶40 Turning from Wis. Stat. § 146.997, Masri points to Wis. Stat. § 146.89——the volunteer health care program statute—— to argue that the legislature knew that some health care workers are not paid and that excluding the health care workers in § 146.89 from retaliation protection contravenes the purposes of both § 146.89 and § 146.997. Section 146.89 provides that volunteers under that section are considered "state agents of the department of health service" for the purposes of Wis. Stat. § 165.25(6) (representation by the attorney general), Wis. Stat. § 893.82(3) (notice of claim requirements), and Wis. Stat. § 895.46 (indemnification from the state). Wis. Stat. § 146.89(4). Masri suggests that volunteer health care providers might decide not to volunteer or report illegal or unethical conduct if they are not considered "employees" under § 146.997. The statutory text does not support Masri's argument, and § 146.89 does not classify volunteers as employees. Rather than supporting Masri's position, § 146.89 undermines her argument because it demonstrates that the

legislature has made special provisions for volunteers in other portions of Wis. Stat. ch. 146 but has not done so in § 146.997. Thus, § 146.89 suggests that the legislature distinguishes between employees and volunteers.

¶41 Considering Wis. Stat. § 146.997 as a whole, every subsection of the statute either expressly uses the term "employee" or refers to "disciplinary action," which can apply only to employees.   Moreover, the enforcement subsection requires the complaints to be processed in the same manner as employment discrimination complaints.  Taken together, the many references to "employee" and the references to the Fair Employment Act and its remedies strongly suggest that § 146.997 applies only to employees who receive compensation or tangible benefits.   This interpretation is further supported by dictionary definitions of "employee."

### 2. The Definition of Employee

¶42  In the absence of a statutory definition, we may look to a dictionary, keeping in mind that our goal is to give statutory language its common and ordinary meaning. See Cnty. of Dane v. LIRC, 2009 WI 9, ¶23, 315 Wis. 2d 293, 759 N.W.2d 571.   Indeed, in its decision in Langer, ERD noted that unless it is specially defined, "employee" should be given its ordinary definition.   Langer v. City of Mequon, ERD No. 199904168 (ERD, Oct. 30, 2000) (using Random House Dictionary of the English Language——Unabridged (2d ed. 1987) to define "employee" as "a person working for another person or a business firm for pay").

¶43 Masri cites to an online dictionary that defines employee as "one employed by another usually for wages or salary and in a position below the executive level." Merriam-Webster, http://www.merriam-webster.com/dictionary/employee (last visited July 2, 2014) (emphasis added). She argues that because the definition says an employee usually works for wages or salary, unpaid interns fall within the definition. However, Masri's definition could also mean that employees usually work for wages or salary but sometimes work for some other type of compensation. Thus, her definition is not necessarily inconsistent with LIRC's decision, which acknowledged that a worker could be an employee based on compensation or tangible benefits other than wages or salary. Masri v. Med. Coll. of Wis., ERD No. CR200902766 (LIRC, Aug. 31, 2011).

¶44 MCW answered Masri's definition with several definitions of its own, one of which defines an employee as "[a] person who works for another in return for financial or other compensation." The American Heritage Dictionary of the English Language, http://ahdictionary.com/word/search.html?q=employee (last visited July 2, 2014). LIRC also offers several definitions, including one for "employ," which means "to provide with a job that pays wages or a salary or with a means of earning a living." Webster's New World Dictionary 743 (3d ed. 1986). All the definitions mentioned would support LIRC's reading of "employee," which would require a worker to receive at least some kind of tangible benefit if she is to be deemed an employee.

¶45  In addition to offering a dictionary definition, Masri argued in her brief that "[t]he statute's interchangeable use of the terms 'person' and 'employee' creates contextual openness regarding the full class of persons whom the legislature authorized to file retaliation complaints as employees and requires a more expansive understanding than LIRC's reflexive and regressive financial compensation test."  Masri appears to concede that a literal interpretation of "any person" does not fit within the statute's context and suggests instead that "any person" refers to an employee, although she contends the definition of "employee" includes unpaid interns.  While context is important for our statutory analysis, Kalal, 271 Wis. 2d 633, ¶46, we disagree that the use of "any person" creates a contextual openness regarding the class of people that the statute covers.

¶46  Given that only employees are subject to "disciplinary action," it seems more likely that the legislature used the term "person" to avoid confusion.  If Wis. Stat. § 146.997(3)(a) used only the term "employee," the statute would read, "[N]o employee of a health care facility or health care provider may take disciplinary action against . . . any [employee] because the [employee] reported in good faith . . . ."  Wis. Stat. § 146.997(3)(a) (emphasis added).  Substituting "employee" for "person" causes confusion because the first reference is to an employee who retaliates whereas the second and third references are to an employee who is subject to retaliation.  The legislature wisely chose to refer to retaliating employees and

25

employees subject to retaliation differently in order to allay confusion.  Thus, the use of "person" does not affect the definition of "employee."

¶47  Moreover, if the statute's reference to "any person" meant that literally "any person" could avail himself, herself, or itself[16] of the protections in Wis. Stat. § 146.997, there would be no justifiable stopping point.  For example, patients, who have no medical training to recognize ethical violations, would arguably be protected by § 146.997 if indeed that statute protected "any person" from retaliation.  Interpreting the statute to protect "any person" also is problematic insofar as only employees may seek remedies under § 146.997(4)(a), and only employees may bring a complaint under § 146.997(2)(a).  Thus, even if § 146.997(3) protected "any person" from retaliation, only "employees" could avail themselves of the statute's remedies.  We refuse to interpret a statute to provide illusory protections.  Instead, we consider the "any person" language in the context of the statutory scheme and conclude that § 146.997(3) protects only employees.

¶48  If, for the sake of argument, we were to disregard tenets of statutory interpretation and interpret "employee" to include "any person" for the purposes of who may file complaints under § 146.997(2)(a) and who may seek remedies under § 146.997(4)(a), DWD and LIRC might experience a drastic

---

[16] "'Person' includes all partnerships, associations and bodies politic or corporate."  Wis. Stat. § 990.01(26).

26

increase in filings that would be handled more efficiently by other entities.  For example, patients (and others) may file complaints with the Wisconsin Department of Safety and Professional Services,[17] an agency designed in part to ensure that licensed professionals provide safe and competent care.  In addition, any person may file a complaint with the Wisconsin Department of Health Services,[18] if the person believes a health care provider violated state or federal law.  Thus, to allow absolutely anybody to file complaints under Wis. Stat. § 146.997 would not only contradict the statutory language but also jeopardize the structure and efficiency of administrative agencies and regulatory boards in this State.

¶49  In addition to her statutory arguments, Masri attempts to analogize to the "borrowed employee" test in workers' compensation cases to support her argument that she was an employee.  See Seaman Body Corp. v. Indus. Comm'n of Wis., 204

---

[17] See Forms for Complaints against Professionals, Wis. Dep't of Safety and Prof'l Servs., http://dsps.wi.gov/Complaints-and-Inspections/Professions-Complaints/Forms-for-Complaints-Against-Professionals/ (last visited July 2, 2014).  The Department of Safety and Professional Services accepts complaints against psychologists, physicians, nurses, and many other professionals.

[18] See Wis. Dep't of Health Servs., http://www.dhs.wisconsin.gov/bqaconsumer/healthcarecomplaints.htm (last visited July 2, 2014).  The Wisconsin Department of Health Services Division of Quality Assurance (DQA) "is responsible for assuring the health, safety, and welfare of the citizens of Wisconsin.  If any individual believes that a caregiver, agency, or DQA regulated facility has violated State or Federal laws pertaining to regulated entities, that individual has the right to file a complaint with DQA."  Id.

Wis. 157, 235 N.W. 433 (1931). The borrowed employee test aids courts in determining whether there is an employment relationship between a borrowed employee and an employer so that the correct entity is responsible for paying for the worker's injury. See id. at 158. The borrowed employee test asks the following questions:

> (1) Did the employee actually or impliedly consent to work for a special employer? (2) Whose was the work he was performing at the time of injury? (3) Whose was the right to control the details of the work being performed? (4) For whose benefit primarily was the work being done?

Id. at 163. Masri contends that this is the proper test to assess whether she was an employee and points out that it makes no reference to compensation. However, the borrowed employee test is inapplicable because it does not ask whether a worker is an "employee"; it asks which employer must pay for the employee's injuries. Thus, there is no need for the test to address compensation, nor is there a need for the test to consider whether the worker in question falls under the "employee" category generally. We decline to extend the borrowed employee test to the facts of this case, as the test was designed for a different purpose and is not relevant for determining whether an intern is an employee under § 146.997.

¶50 The statute and the dictionary definitions demonstrate that an "employee" under Wis. Stat. § 146.997 is someone who works for some type of compensation or tangible benefits. Thus, uncompensated interns who receive no tangible benefits do not

28

fall under the definition of "employee" and are not protected by § 146.997.[19]

### B. Public Policy

¶51 In addition to her statutory interpretation arguments, Masri makes a variety of policy arguments. She suggests that the statute's remedial purpose warrants an expansive definition of "employee." She argues that interns must have retaliation protection to avoid destroying the statute's purpose to protect patients.[20] Masri advances legitimate policy interests, but the

---

[19] We need not consider what quantity of tangible benefits or compensation would cause an intern to be considered an "employee." It is sufficient to note that in this case, Masri's alleged tangible benefits did not make her an "employee."

[20] Masri argues that Wis. Stat. § 146.997 has two related purposes: expanding retaliation protection for health care workers and protecting patients and public health by encouraging people to report misconduct. She points to two pieces of legislative history as evidence of the statute's purposes. The first piece of legislative history is a fact sheet from the Wisconsin Federation of Nurses and Health Professionals that is written in terms of employees. Drafting File, 1999 Wis. Act 176, Legislative Reference Bureau, Madison, Wis. The second piece of legislative history is a drafter's note that mentions that state and private health care workers receive the same protection under the act. Id. Neither piece of legislative history demonstrates that the legislature intended to protect unpaid interns.

effect of her argument is to engraft purposes onto the statute that are not embedded in its text. Public policy is not a panacea for perceived shortcomings in legislative determinations. Nothing in the statute evinces a purpose to protect unpaid interns. Implicitly, the statute protects patients by protecting employees who report violations of health related state and federal statutes, regulations, and standards. LIRC's interpretation advances the statute's purpose to protect patients; it simply is not as broad as Masri would like.

¶52 Masri attempts to support her argument by noting that this court has recognized public policy interests to protect patients in the context of nursing home residents. See Hausman v. St. Croix Care Ctr., 214 Wis. 2d 655, 665, 571 N.W.2d 393

---

Masri's reliance on legislative history is inapposite because analysis of a statute's purpose must begin with the language and context of the statute. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶¶45-49, 271 Wis. 2d 633, 681 N.W.2d 110. The language of the statute suggests that the legislative purpose is to protect employees from retaliation, which implicitly encourages the reporting of improper conduct, safeguards the livelihood of paid employees, and protects patients. Thus, LIRC's interpretation that the statute applies only to employees advances the statute's purpose, and excluding interns from the protected group does not contravene the statutory purpose. Moreover, even if Masri's interpretation is reasonable, it is not more reasonable than the interpretation of LIRC.

(1997).[21]    In Hausman, a licensed nurse and a licensed social worker, both employed by St. Croix Care Center, alleged that they were terminated for reporting abuse at the nursing home. Id. at 659-63.    The plaintiffs alleged that the public policy exception to the employment-at-will doctrine allowed them to bring a private right of action.    Id. at 661-63.    This court declined to adopt a broad whistleblower exception to the employment-at-will doctrine despite the fact that it might advance the public interest.    Id. at 666.    Instead, we tied the exception to the fact that plaintiffs had an affirmative obligation to prevent any suspected abuse of nursing home residents.    Id. at 667-69 (citing Wis. Stat. § 940.295(3) (1993-94) as one law that creates an obligation to report concerns). We went on to conclude:

> The public policy of protecting nursing home residents from abuse is fundamental and well-defined. Where the law imposes an affirmative obligation upon an employee to prevent abuse or neglect of nursing home residents and the employee fulfills that obligation by reporting the abuse, an employer's termination of employment for fulfillment of the legal obligation exposes the employer to a wrongful termination action.    In such instances, the employee may pursue a wrongful termination suit under the public policy exception regardless of whether the employer has made an initial

---

[21] Hausman v. St. Croix Care Center, 214 Wis. 2d 655, 571 N.W.2d 393 (1997), was decided before the legislature created Wis. Stat. § 146.997.    It appears that § 146.997 was created in response to the Hausman decision to protect health care employees who might not otherwise be protected by the public policy exception to the employment-at-will doctrine. See Daryll J. Neuser, Wisconsin Health Care Workers: Whistleblower Protection, 77 Wis. Law. 16, 18 (Mar. 2004).

request, command, or instruction that the reporting obligation be violated.

Id. at 669 (emphasis added) (footnote omitted).

¶53 Influencing the Hausman decision was the fact that the plaintiffs could have been criminally prosecuted if they did not report the abuse.[22]  Id. at 665.  It is noteworthy that both plaintiffs in Hausman were employed, and the exception related to the employment-at-will doctrine.  Id. at 666.  Nothing in that decision suggests that the public policy to promote patient safety warrants a broad protection for unpaid interns, especially when that broad protection finds little support in the text.  Indeed, Hausman's aversion to creating an expansive public policy exception suggests that we should avoid broadening the definition of "employee."

¶54 Declining to broaden the definition of "employee" to include interns does not contradict the statutory purposes, and in fact, it might actually protect internships.  Amicus Curiae, the Wisconsin Hospital Association (WHA), points out that health

---

[22] Cf. Bammert v. Don's SuperValu, Inc., 2002 WI 85, ¶39, 254 Wis. 2d 347, 646 N.W.2d 365 (Bablitch, J., dissenting). Justice Bablitch discussed the apparent rationale for the Hausman decision:

In Hausman, we gave employees that fulfilled their legal duty protection from retaliatory firing.  The idea behind the exception is simply that we want people to fulfill their legal duties. . . .  We do not want people to be afraid to report nursing home abuse because they are afraid to be fired; therefore, we protect them.

Id.

care employees have had training to recognize reportable conduct, whereas interns may not know what incidents are reportable. WHA expresses concern that health care providers might reduce internship opportunities if interns, who might not have as much training as employees to recognize and report unethical or illegal conduct, are protected under Wis. Stat. § 146.997.

¶55 MCW asserts that if interns fall under the definition of "employee" in Wis. Stat. § 146.997, there would be no logical stopping point for people who fall under the protected class. Ultimately, the law is clear that this court should avoid using public policy to contradict a statute's plain text, and "[i]f the result in this case seems harsh, redress should come from the legislature, not from this court. 'If a statute fails to cover a particular situation, and the omission should be cured, the remedy lies with the legislature, not the courts.'" Meriter Hosp., Inc. v. Dane Cnty., 2004 WI 145, ¶35, 277 Wis. 2d 1, 689 N.W.2d 627 (quoting La Crosse Lutheran Hosp. v. La Crosse Cnty., 133 Wis. 2d 335, 338, 395 N.W.2d 612 (Ct. App. 1986)). LIRC's interpretation that § 146.997 applies only to compensated employees is reasonable, and we conclude that there is no interpretation that is more reasonable.

C. Application to Masri

¶56 Having determined that Wis. Stat. § 146.997 applies only to compensated employees, we must consider whether LIRC properly determined that Masri was not an employee. Masri suggests that her all-access security badge, office space,

33

parking, and support staff were tangible benefits that made her an employee.  Yet, as LIRC properly determined, these alleged tangible benefits all related to Masri's work as a "Psychologist Intern" and had no independent value.  If these benefits were enough to confer employee status on Masri, it seems that almost any unpaid worker would be considered an employee.  Similarly, Masri's networking opportunities were not tangible benefits because such opportunities are not tangible, nor do they have any ascertainable value.  Finally, absent a contractual guarantee, promises of health insurance or grant money do not constitute tangible benefits if those promises never come to fruition.  Thus, we agree with LIRC's determination that Masri was not an employee because she received no compensation and no tangible benefits.

¶57 We are not oblivious to the importance of internships and the often mutually beneficial relationship between interns and their supervising entity.  The purpose of this opinion is not to impair that relationship but to implement the legislature's statutory scheme.  Interns often provide valuable services to their supervising entities and receive vital training in return.  An internship might provide students with their first opportunity to apply their hard-earned knowledge in a real and practical setting.  Although we recognize the importance of internships, this court will not interlope to advance a policy not advanced by the legislature.  Should the legislature disagree with our decision and the five decisions below in the administrative and judicial proceedings, it may

34

clarify the breadth of "employee" as it is used in § 146.997. Absent a legislative clarification, we are bound by the statute's text.

IV. CONCLUSION

¶58  We conclude the following.

¶59  First, we accord LIRC's decision due weight deference because LIRC has experience interpreting the meaning of "employee" under various statutes and is charged with administering Wis. Stat. § 146.997.  The fact that LIRC had not previously considered the specific question whether an unpaid intern is an employee is not enough to abate the due weight deference owed to the agency.  See Jamerson, 345 Wis. 2d 205, ¶47.

¶60  Second, we agree with LIRC that Wis. Stat. § 146.997 applies only to employees, a category that does not include interns who do not receive compensation or tangible benefits. See Masri v. Med. Coll. of Wis., ERD No. CR200902766 (LIRC, Aug. 31, 2011).  As Wis. Stat. § 146.997 does not define "employee," we must give the term its ordinary meaning.  Kalal, 271 Wis. 2d 633, ¶45.  After consulting the language, context, and structure of the statute, we conclude that LIRC's interpretation is reasonable, and there is no more reasonable interpretation. Because Masri received no compensation or tangible benefits, she was not an employee of MCW and was therefore not entitled to anti-retaliation protection under § 146.997(3)(a).

¶By the Court.—The decision of the court of appeals is affirmed.

35

¶61 ANN WALSH BRADLEY, J. *(dissenting).* The Health Care Worker Protection Act protects whistleblowers who are health care workers and who report unethical or illegal behavior that threatens the health and safety of patients. Masri, a full-time health care worker at the Medical College of Wisconsin (MCW), did everything she was supposed to do under the Act. She reported what she observed as unethical and potentially illegal behavior. There is nothing to suggest that her reporting was anything other than good faith reporting.

¶62 She asserts that as a result of her good faith reporting, her internship was terminated, her educational career has been disrupted, and she has been stigmatized with a black mark on her professional career. She asks for vindication that what she did was right, and payment of her attorney fees in seeking that vindication.

¶63 Even though she did what was asked under the Act, the majority denies her any vindication. It leaves Masri and other health care workers like her without protection and without a remedy. The result is that these health care workers who are in a position to witness and report problems with patient care may now be silent, resulting in lower quality patient care.

¶64 This case is about statutory construction. I part ways with the majority because in reaching its conclusion it discards our time-tested canons of statutory construction. In doing so, the majority rewrites the statute, limits application of the Health Care Worker Protection Act beyond what is required

by its terms, and undermines the Act's purpose of protecting patients.

¶65 Contrary to the majority, I conclude that the Health Care Worker Protection Act means what it expressly provides: its coverage extends to "any person." Further, even if the Act's coverage were limited to employees only, the canons of statutory construction mandate that "employee" be interpreted broadly in order to fulfill the remedial purpose of the Act. Under either approach, Masri should be afforded coverage. Accordingly, I respectfully dissent.

I

¶66 The majority downplays certain facts relevant to this case. Because there is more to the story, I begin with an overview of the events preceding this action.

¶67 Masri was a doctoral candidate in the University of Wisconsin-Milwaukee School of Education (UWM), Department of Education Psychology. UWM placed Masri as a full-time intern at MCW as part of her educational program. Prior to the start of her internship, Masri's future supervisor, Dr. Anderson, e-mailed her stating: "I have found some funding for you for a research project. And actually have a commitment. Still working on the amount but think at least 500 per month."

¶68 In August 2008 Masri started working as a "Psychologist Intern" in MCW's transplant surgery unit at Froedtert Hospital. She worked 40 regularly scheduled hours per week. Her duties included interviewing patients and staff, reviewing and assessing medical records, signing psychological

reports, preparing patient progress notes, and attending staff meetings. As part of her internship, Masri received full access to patient records otherwise protected by HIPAA[1] and the hospital's facilities.

¶69 Some ethical concerns arose during Masri's internship and she was directed by MCW staff to report them to John Mayer, the official designated to receive employee complaints. Masri met with Mayer on November 19, 2008, and reported that Dr. Anderson ordered her to create a borderline personality diagnosis to discredit a patient who may have been contemplating a medical malpractice suit. She also reported that she was directed to perform professional duties outside the authorized parameters of her intern position. Specifically, she was ordered to work as a professional social worker——not as a Psychologist Intern——while the transplant unit social worker was away on vacation. She was also directed to complete evaluations in the role of an authorized social worker for patients. Although Masri had more incidents to report,[2] Mayer cut her off,

---

[1] The Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 U.S. Stat. 1936 (codified as amended in scattered sections of Titles 18, 26, 29 and 42 of the U.S. Code).

[2] Masri asserts that had Mayer not cut her off, she would have reported the following additional incidents:

1) Dr. Anderson ordering her not to speak to anyone about an "off-list" organ transplant recipient who paid $25,000.00 for a kidney harvested from Pakistan;

2) A social worker on the transplant unit making an unethical recommendation to eliminate a transplant candidate based on a subjective moral judgment of the candidate's personal life and educational background; and

3

stating that he needed to discuss her allegations with Dr. Anderson. Two days later, Dr. Anderson called UWM from Washington, D.C. to terminate Masri's internship.

¶70 Masri filed a complaint with the Equal Rights Division of the Department of Workforce Development (DWD) about the termination of her internship. In response to inquiries from the Equal Rights Division, MCW stated that Masri was not an employee and that her internship was discontinued due to her unsatisfactory performance. In support, MCW attached a letter from Dr. Anderson explaining her decision to terminate Masri's internship. Dr. Anderson's undated letter, which was drafted after Masri's internship was terminated, made reference to incidents in October 2008 and referred to them as being the grounds for the termination. Other than this undated, post-termination letter, there are no other notes in the record about the incidents or any other documentation that would substantiate a concern that Masri's performance was unsatisfactory.

II

¶71 The majority determines that the Act's protections apply only to individuals who work in exchange for compensation or tangible benefits. In reaching this determination, the majority fails to follow time-tested canons of statutory construction. Those canons provide that when interpreting a statute, we look first to the language of the statute. State ex

---

3) Dr. Anderson's order that Masri interview and assess a mentally incompetent and semi-conscious ICU patient to disqualify that patient from the priority transplant list.

rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.

¶72 Unlike what the majority suggests, the statute expressly states who is covered——"any person." Specifically, it provides:

> No health care facility or health care provider and no employee of a health care facility or health care provider may take disciplinary action against, or threaten to take disciplinary action against, any person because the person reported in good faith any information under sub. (2)(a), in good faith initiated, participated in or testified in any action or proceeding under sub. (2)(c) or provided in good faith any information under sub. (2)(d) or because the health care facility, health care provider or employee believes that the person reported in good faith any information under sub. (2)(a), in good faith initiated, participated in or testified in any action or proceeding under sub. (2)(c) or provided in good faith any information under sub. (2)(d).

Wis. Stat. § 146.997(3)(a) (emphasis supplied).

¶73 The majority, however, inserts its own word "employee" for the legislature's chosen words "any person." In doing so, it violates a cardinal canon of statutory construction. Rather than adhering to the express language chosen by the legislature, it discards it.

¶74 The majority attempts to justify its rewriting of the express language of the Health Care Worker Protection Act by implying that it was inartfully drafted. It offers the excuse that the legislature used the words "any person" to differentiate between the employee retaliating and the employee being retaliated against in order to allay confusion. Majority op., ¶45.

5

¶75 This excuse is without merit. If the legislature had intended for the statute to apply only to employees, it could have easily cured the suggested confusion. It takes this writer mere seconds to provide an example: "No health care facility or health care provider and no employee of a health care facility or health care provider may take disciplinary action against, or threaten to take disciplinary action against, an employee who reported in good faith. . . ."

¶76 "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Kalal, 271 Wis. 2d 633, ¶39 (quoting Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)). As this court has previously explained, "[i]t is not reasonable to presume that the legislature preferred elegance over precision in its wording of the statute. The more reasonable presumption is that the legislature chose its terms carefully and precisely to express its meaning." Ball v. Dist. No. 4, Area Bd. of Vocational, Technical & Adult Educ., 117 Wis. 2d 529, 539, 345 N.W.2d 389 (1984).

¶77 Further, it is a well-established canon of statutory construction that each word in a statute should have independent meaning so that no word is redundant or superfluous. Pawlowski v. Am. Family Mut. Ins. Co., 2009 WI 105, ¶22, 322 Wis. 2d 21, 777 N.W.2d 67. Thus, "[w]hen the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings." Id.

6

¶78 The legislature used both "employee" and "person" throughout the Health Care Worker Protection Act.[3] When it came to defining the coverage of the Act, the legislature chose to use the words "any person." Wis. Stat. § 146.997(3)(a). Under the canons of statutory construction, which the majority ignores, the express language of the statute referring to "any person" should not be interpreted as "employee."

¶79 In reading the words "any person" as meaning "employees," the majority limits the Health Care Worker

---

[3] For example, Wis. Stat. § 146.997 states:

(2) Reporting protected.

(a) <u>Any employee</u> . . . who is aware of any information, . . . that would lead a reasonable <u>person</u> to believe any of the following may report that information to . . . <u>any employee</u> of the health care facility . . ..

(b) An agency [shall], . . . notify the health care facility or health provider . . . .. The notification and summary may not disclose the identity of <u>the person</u> who made the report.

(c) <u>Any employee</u> of a health care facility or health care provider may initiate, . . . any action or proceeding . . ..

(d) <u>Any employee</u> . . . may provide any information relating to an alleged violation . . ..

(3) Disciplinary action prohibited.

. . ..

(b) . . . no <u>employee</u> . . . may take disciplinary action against . . . <u>any person</u> on whose behalf another <u>person</u> reported in good faith any information . . . or because the . . . <u>employee</u> believes that another <u>person</u> reported in good faith any information . . . on that <u>person's</u> behalf. . . .

7

Protection Act beyond its terms. In its analysis, the majority cites to other provisions in the Act and reasons that the words "any person" must mean employees working for compensation or tangible benefit. It asserts that the disciplinary actions the Act prohibits and the remedies the Act provides could not apply to unpaid workers. Majority op., ¶¶36, 38, 45. Not only is this suggestion not supported by the language of the Act, but it also reads its terms more narrowly than they are written.

¶80 The Health Care Worker Protection Act adopts the definition of "discipline" provided by Wis. Stat. § 230.80(2), which includes such actions of the employer that result in a dismissal, transfer, removal of assigned duty, reprimand, verbal or physical harassment, denial of education or training, and reassignment. It is unclear why these employer actions would not be applicable to unpaid workers.

¶81 Similarly, it is unclear why the whistleblower's remedies permitted by the statute could not apply to unpaid workers.[4] As explained by the majority, Wis. Stat. § 146.997(4)(a) details how employees may report violations to the DWD.[5] If the DWD determines that there have been violations, it may award remedies as described in Wis. Stat. § 111.39.

---

[4] The majority's analysis in this respect appears circular——unpaid workers are not covered by the Act because they cannot seek its remedies, yet they cannot seek the Act's remedies because they are unpaid workers.

[5] Although Wis. Stat. § 146.997(4)(a) uses the term "employee" in describing how to report violations, as more fully discussed below, nothing in the Heath Care Worker Protection Act limits the term "employee" to an individual working in exchange for compensation.

8

Majority op., ¶¶35-36. Among the remedies suggested by Wis. Stat. § 111.39(4)(c) is reinstatement. The court has also determined that aggrieved workers are entitled to attorney fees. Watkins v. Labor & Indus. Review Comm'n., 117 Wis. 2d 753, 765, 345 N.W.2d 482 (1984). An unpaid intern whose internship had been terminated for reporting a violation of the law may find reinstatement to be a desired remedy. The intern is also likely to want attorney fees in seeking that reinstatement. Nothing in the Act limits these remedies to only paid employees. Nothing in the express language of the Health Care Worker Protection Act limits its protections only to individuals working for compensation as the majority suggests.

¶82 In paragraphs 47-48, the majority sets up its own straw man only to quickly knock it down. In essence, it warns that the sky is falling if there is a literal translation of the statutory words "any person." For example, the majority suggests that a literal translation would mean that anybody in the world could file a complaint, "absolutely anybody." Majority op., ¶48. And, if that does not frighten the reader enough, in a footnote, the majority expounds further to observe that "person includes all partnerships, associations and bodies politic or corporate." Id., ¶47 n.17. Having set up the straw man that "any person" could include a body politic in Timbuktu filing a complaint, the majority warns "there would be no stopping point" and that a literal translation would "jeopardize the structure and efficiency of administrative agencies and regulatory bodies in the State." Id.

9

¶83 The problem with the majority's straw man argument, like all straw men arguments, is that it sets up an argument that no one is advancing. Instead, I determine that "any person" includes any person who faces disciplinary action from a health care facility for reporting possible violations that pose a risk to public health or safety.

¶84 I acknowledge that ambiguity arises because the Health Care Worker Protection Act incorporates the definition of "disciplinary action" found in Wis. Stat. § 230.80. Wis. Stat. § 146.997(1)(b). Wisconsin Stat. § 230.80 defines "disciplinary action" as "any action taken with respect to an employee which has the effect, in whole or in part, of a penalty, including but not limited to any of the following. . . ." (emphasis supplied). Where this definition conflicts with the language in the Health Care Worker Protection Act, it creates ambiguity.

¶85 However, "[w]hen a statute is ambiguous, the legislature is presumed to have intended an interpretation that advances the purposes of the statute." Belleville State Bank v. Steele, 117 Wis. 2d 563, 570, 345 N.W.2d 405 (1984). The purpose of the Health Care Worker Protection Act is evident from its language. It protects workers who report that "the quality of any health care service provided by the health care facility or health care provider . . . violates any standard . . . and poses a potential risk to public health or safety." Wis. Stat. § 146.997(2)(a). If the law protects workers who report patient quality of care problems, necessarily it is meant to encourage

those workers to do so. Thus, on its face, the statute is aimed at protecting patients.

¶86 The majority's approach undermines this purpose. Although the majority acknowledges that the purpose of the statute is to protect patients, it simultaneously chastises Masri for "engraft[ing] purposes onto the statute that are not embedded in its text." Majority op., ¶51. Then, without explanation, the majority states that "[d]eclining to broaden the definition of 'employee' to include unpaid interns does not contradict the statutory purposes." Majority op., ¶54. It is hard to conceive how a limited reading of the Health Care Worker Protection Act would not run counter to its goal of patient protection. If fewer health care workers report problems with patient care, there will be fewer opportunities for those problems to be fixed and patients will be left at risk.

¶87 Due to the remedial purpose of the Health Care Worker Protection Act, our canons of statutory construction dictate that its provisions be liberally construed. Watkins, 117 Wis. 2d at 762 (statutes containing broad remedial language shall be liberally construed). Courts generally construe whistleblower protection laws broadly to achieve their protective goals. See, e.g., Passaic Valley Sewerage Comm'rs v. U.S. Dep't of Labor, 992 F.2d 474, 478-79 (3d Cir. 1993) (terms used in whistleblower protection law, which was aimed at encouraging workers to aid in enforcement of Clean Water Act and nuclear safety statutes, broadly construed to achieve that goal); Rayner v. Smirl, 873 F.2d 60, 64 (4th Cir. 1989)

11

(determining that a more inclusive interpretation of "employee" is warranted for the whistleblower provisions in the Federal Railway Safety Act, aimed at promoting rail safety); Phillips v. Interior Bd. of Mine Operations Appeals, 500 F.2d 772, 781 (D.C. Cir. 1974) (narrow construction of the whistleblower provision in Mining Safety Act would be contrary to its purpose of increasing safety in mines). A similar liberal construction of the Act's scope would support the Health Care Worker Protection Act's purpose of protecting patients.

¶88 When liberally construed, the conflict between the Act's scope as dictated by the "any person" language and the definition of "disciplinary action" should be cured by deferring to the language defining the scope of the Act. The Health Care Worker Protection Act incorporates the definition of "disciplinary action" from a statute on state employee protection. Wis. Stat. §§ 146.997(1)(b), 230.80(2). In the context of defining state employee protection, the language in the definition referring to employees is appropriate. Wis. Stat. § 230.80(2) ("Disciplinary action" means any action taken with respect to an employee . . ."). However, the use of the term "employee" in Wis. Stat. § 230.80(2) was not intended to delineate the scope of the Health Care Worker Protection Act. That function is served by the specific language in Wis. Stat. § 146.997(3)(a).

¶89 Wisconsin Stat. § 146.997(3)(a) more specifically addresses the scope of the Health Care Worker Protection Act, therefore its provisions should govern. This is consistent with

12

the canon of statutory construction that "[w]here a general statute and a specific statute relate to the same subject matter the specific statute controls."  Wauwatosa v. Grunewald, 18 Wis. 2d 83, 87, 118 N.W.2d 128 (1962).

¶90  The language of the Health Care Worker Protection Act indicates its remedial purpose of protecting patients.  This is best achieved by interpreting the words "any person" to mean what they say.  See Kalal, 271 Wis. 2d 633, ¶39.  Accordingly, I conclude that the Act protects any person from facing disciplinary action for reporting quality of care issues.  This includes Masri.

### III

¶91  Even if the majority were correct that "any person," as used in the Health Care Worker Protection Act, refers only to "employees," that does not mean that "employee" should be accorded a narrow definition centered on compensation.  It is worth noting again that statutes should be construed liberally to effectuate their purpose.  State v. Zielke, 137 Wis. 2d 39, 47, 403 N.W.2d 427 (1987).  Accordingly, "employee" should be read broadly to meet the purpose of protecting patients.

¶92  The majority suggests that the Labor and Industry Review Commission (LIRC) has always construed "employee" as an individual working for an employer in exchange for wage or compensation.  Majority op., ¶¶26, 37 n.14.  That is incorrect.

¶93  LIRC decides appeals in three administrative areas: workers compensation law, unemployment compensation law, and equal rights law (which includes the Health Care Worker

13

Protection Act). In the context of both worker compensation and unemployment compensation, LIRC has concluded that an individual can be considered a statutory employee to effectuate the purposes of the statute even when the individual has not received a dime from the employer and has never set foot on the employer's premise.

¶94 The appeals that LIRC review arise from the decisions of the Department of Workforce Development (DWD). Here, the DWD dismissed Masri's complaint without further investigation, concluding that because she was not compensated by MCW for her work, Masri was not a covered employee under the Act.

¶95 Yet, the DWD has previously explained that the definitions of "employee" in the different statutes that LIRC administers will vary depending on the purpose of the statute. It notes that the definitions "are likely to be similar, but rarely will they be identical. The Legislature has determined that there are different policy considerations for each program, that in turn require slightly different definitions [of 'employee']." Department of Workforce Development, "Independent Contractors and Worker's Compensation in Wisconsin" at 6 (June 2003), available at http://dwd.wisconsin.gov/dwd/publications/wc/WKC_13324_P.pdf (emphasis supplied).

¶96 For example, in Green Bay Packaging, Inc. v. Dep't of Indus., Labor & Human Relations, 72 Wis. 2d 26, 36, 240 N.W.2d 422 (1976), the court determined that for purposes of the Worker's Compensation Act an employee of a subcontractor qualifies as a statutory employee of the general contractor when

14

the subcontractor regularly furnishes to a principal employer materials or services which are integrally related to the finished product or service. It explained that "the workmens' compensation law of this state must be liberally construed to reach the objectives of that law," and that "the purpose of this legislation was to protect employees of irresponsible and uninsured subcontractors." Id. at 37.

¶97 Similarly, as noted in Sears, Roebuck & Co. v. Dep't of Indus., Labor, & Human Relations, 90 Wis. 2d 736, 280 N.W.2d 240 (1979), the definition of "employee" for purposes of the unemployment compensation law "mean[t] any individual who is or has been performing services for an employing unit, in an employment, whether or not he is paid directly by such employing unit." Id. at 742 (quoting Wis. Stat. § 108.02(3)(a) (1971)). The court explained that although an individual may be an independent contractor, "this does not necessarily bar him from being an employee under the act. His status under the act must be determined from the act itself in view of the purpose of the act as declared therein." Id. at 743 (quoting Moorman Mfg. Co. v. Indus. Comm'n, 241 Wis. 200, 203, 5 N.W.2d 743 (1942)).

¶98 In this case we are presented with an issue of first impression. The Health Care Worker Protection Act does not define "employee." We are asked to determine if it is more reasonable to liberally construe the term "employee" in the Health Care Worker Protection Act to effectuate the Act's purpose, as the court has done with the Workers' Compensation Law and Unemployment Compensation Law, or to use a limiting

15

test, narrowly focusing only on compensation between the employer and employee. Both LIRC and the majority have opted for a narrow interpretation.

¶99 Contrary to the majority, I conclude that it is more reasonable to construe "employee" liberally to effectuate the remedial purpose of the Act. In doing so, I would apply the test for a master-servant relationship as found in our common law. The broad definition of employee from the master-servant test is more consistent with the remedial purpose of the Health Care Worker Protection Act because it enables more workers to report quality of care issues and meets the statute's purpose of protecting patients.

¶100 Use of the master-servant test is also consistent with our caselaw. Where a term in a statute is undefined or not helpfully defined, the Wisconsin Supreme Court has referred to the common law definition of the term to aid in interpretation. For example, it utilized this approach in interpreting "employee" as used in the Unemployment Compensation Act. Wisconsin Bridge & Iron Co. v. Indus. Comm'n, 233 Wis. 467, 478, 290 N.W. 199 (1940). At the time, the statutory definition of "employee" was "any individual employed by an 'employer' and in an 'employment.'" Id. at 477. The court stated that this implies that the term "employee" and "employer" are to be given their common-law meaning. Id. The court explained that "there is nothing in the definition there given to indicate anything different from the common-law concept," and that if the legislature "had intended to change the ordinary and commonly

16

understood meaning of the words 'employer' and 'employee' they would have used language expressly so declaring." Id. at 478.

¶101 Likewise, the United States Supreme Court has explained that "[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." Community for Creative Non-Violence v. Reid, 490 U.S. 730, 739 (1989) (quoting NLRB v. Amax Coal Co., 453 U.S. 322, 329 (1981)).

¶102 Accordingly, when interpreting federal statutes that use the term "employee" without helpfully defining it, the Supreme Court construes that term as descriptive of "the conventional master-servant relationship as understood by common-law agency doctrine." Id. at 740. It has consistently used this approach to interpret a number of federal statutes. See, e.g., Clackamas Gastroenterology Assocs. v. Wells, 538 U.S. 440, 448 (2003) (using the common-law definition of master-servant relationship when interpreting the meaning of employee under the Americans with Disabilities Act); Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992) (construing "employee" under Employee Retirement Income Security Act based on common law principles of agency); Reid, 490 U.S. at 739 (construing "employee" as used in the Copyright Act); Kelley v. Southern Pac. Co., 419 U.S. 318, 323-24 (1974) (using common-law principle of master-servant relationship to determine employment statutes under the Federal Employers' Liability Act); NLRB v.

17

United Ins. Co., 390 U.S. 254, 258 (1968) (construing "employee" under the National Labor Relations Act based on common-law agency principles).

¶103 In a similar vein, the Wisconsin Court of Appeals has determined that "the factors relevant to a master/servant relationship are relevant to deciding whether [the defendant] was a state employee" for purposes of Wis. Stat. § 893.82. Lamoreux v. Oreck, 2004 WI App 160, ¶22, 275 Wis. 2d 801, 686 N.W.2d 722.

¶104 The common law definition of a master-servant relationship is much broader than the definition that the majority applies here, which is limited to whether or not a worker receives compensation or tangible benefits. At federal common law, a determination of whether a master-servant relationship exists takes into account a number of factors, including:

> the hiring party's right to control the manner and means by which the product is accomplished. . . . the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Darden, 503 U.S. at 323-24 (quoting Reid, 490 U.S. at 751-52). "[A]ll of the incidents of the relationship must be assessed and weighed with no one factor being decisive." NLRB v. United Ins.

18

Co. of America, 390 U.S. at 258. Consistent therewith the Restatement (Third) of Agency, § 7.07(2)(b) states: "the fact that work is performed gratuitously does not relieve a principal of liability."

¶105 Wisconsin courts use almost identical factors in determining whether a master-servant relationship exists in the context of tort liability. As explained in Pamperin v. Trinity Mem'l Hosp., 144 Wis. 2d 188, 199, 423 N.W.2d 848 (1988), the dominant test in determining whether an individual is a servant is "[t]he right to control."

¶106 Other factors to consider include: "the place of work, the time of the employment, the method of payment, the nature of the business or occupation, which party furnishes the instrumentalities or tools, the intent of the parties to the contract, and the right of summary discharge of employees." Id. at 199. As with the federal cases, no one factor is determinative and "[a] servant need not be under formal contract to perform work for a master, nor is it necessary for a person to be paid in order to occupy the position of servant." Kerl v. Rasmussen, Inc., 2004 WI 86, ¶22, 273 Wis. 2d 106, 682 N.W.2d 328; Petzel v. Valley Orthopedics Ltd., 2009 WI App 106, ¶16, 320 Wis. 2d 621, 770 N.W.2d 787 (same).

¶107 Contrary to the majority, I determine that it is more reasonable to interpret the Health Care Worker Protection Act with the broad master-servant test from our common law than a dictionary definition of the term "employee." This broad test is consistent with the statute's purpose. Further, Wisconsin

19

and United States Supreme Court caselaw establishes that it is the appropriate test to apply when a statute uses the term "employee" without providing a helpful definition.

¶108 Applying the master-servant factors to the case at hand reveals that Masri qualifies as an employee. Throughout Masri's internship, MCW had the right to control her actions. Masri was placed in MCW's transplant surgery unit at Froedtert Hospital. She worked 40 regularly scheduled hours per week as a psychology intern. Dr. Anderson had obtained a grant to fund Masri's work. Masri's duties included interviewing patients and staff, reviewing and assessing medical records, signing psychological reports, preparing patient progress notes, and attending staff meetings. In that role, MCW granted Masri full access to HIPAA protected patient records and MCW's facilities. This suggests the intent to have an employee-employer relationship. Further, MCW had the right to summarily discharge Masri at any time. These factors outweigh the fact that Masri was not paid for her services and suggest that she should be considered an employee for purposes of the Health Care Worker Protection Act. Accordingly, I would reverse the court of appeals and remand the case for an investigation and determination of whether MCW unlawfully terminated Masri's internship in retaliation for the complaints she made about clinical and ethical concerns.

IV

¶109 The parties dispute whether due weight or no weight should be accorded to LIRC's interpretation of the Health Care

Worker Protection Act limiting coverage to paid employees. These levels of deference are analytically equivalent as both require the court to independently interpret a statute. <u>Racine Harley-Davidson v. State Div. of Hearings & Appeals</u>, 2006 WI 86, ¶20, 292 Wis. 2d 549, 717 N.W.2d 184. Even under due weight deference, the agency's interpretation will not be adopted if the court determines an alternate interpretation is more reasonable. <u>Id.</u>

¶110 As discussed above, I conclude that there is a more reasonable interpretation of the Health Care Worker Protection Act than the limited one accorded by LIRC. The Health Care Worker Protection Act should be interpreted as meaning what it expressly provides: its coverage extends to "any person." Further, even if the Act's coverage was limited to employees only, the canons of statutory construction mandate that "employee" be liberally construed in order to fulfill the remedial purpose of the Act. Under either approach, Masri should be afforded coverage. Accordingly, I respectfully dissent.

¶111 I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.